UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-cr-20003 |
| | ) |
| WILLIAM WHITEFIELD, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION

This matter is now before the Court on Defendant William Whitefield's Second Amended Motion for Compassionate Release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 133. For the reasons stated below, his Motion is DENIED.

### BACKGROUND

Defendant William Whitefield ("Defendant") was twenty-three years old and struggling financially when he met Michael Hembree ("Hembree") through their common interest in martial arts. ECF No. 60 at 7. Hembree was also having financial difficulties. *Id*. To solve their financial problems, they devised a plan to rob banks and split the money they took 50/50. *Id*. Between October 24, 2003, and November 26, 2003, they committed four armed bank robberies in Illinois. ECF No. 133 at 1.

The first robbery occurred on October 24, 2003, at the Camargo Bank in Camargo, Illinois. ECF No. 135 at 3. Hembree held two employees and a customer at gunpoint while Defendant gathered $35,739 from the bank's vault. *Id*.; ECF No. 60 at 5. Before leaving the bank, Hembree sprayed the employees and a customer in the face with pepper spray, presumably to delay their ability to call law enforcement or set off the alarm. *Id*.

On November 7, 2003, they entered the Vermillion Valley Bank in Kempton, Illinois and demanded two female employees to surrender cash. ECF No. 135 at 3. Defendant emptied the vault and teller drawers and placed about $53,505.50 in a bag. ECF No. 60 at 5. Before fleeing the bank, Hembree sprayed a customer and the two employees with pepper spray. *Id*.

On November 21, 2003, they robbed the First National Bank in Royal, Illinois. ECF No. 60 at 6. As Defendant emptied the vault, Hembree ordered an employee to tell a customer at the drive-up window that it was broken and to come inside to complete the transaction. *Id*. When the customer entered the bank with his two-year-old grandson, Hembree pointed a gun at them and ordered them to sit in the lobby with the employees. *Id*. Defendant and Hembree fled the bank with $16,161 in cash and $24,000 in traveler's checks after Hembree sprayed the customer and employees with pepper spray. *Id*.

Five days later, they robbed the Edgar County Bank and Trust in Ashmore, Illinois. *Id*. Defendant gathered the money from the teller drawers and vault while Hembree ordered three female employees to go into the restroom and not come out. *Id*. Before fleeing the bank with $39,015 in cash, Defendant and Hembree took the videotape from the surveillance system. *Id*.

On December 4, 2003, Defendant was arrested. *Id*. at 7. During an interview with FBI agents, he admitted to participating in the bank robberies. *Id*. Defendant was charged with four counts of armed bank robbery (Counts 1, 3, 5, 7) and four counts of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 2, 4, 6, 8). ECF No. 8.

Pursuant to a cooperation plea agreement, Defendant pled guilty to the four robberies and two of the § 924(c) counts. ECF No. 27. The Government agreed to dismiss the remaining § 924(c) violations. ECF No. 135 at 4-5. At the time of sentencing, Defendant had no criminal history points and had a criminal history category of I. ECF No. 133 at 2. The Government made a

recommendation for a downward variance. ECF No. 63. On May 3, 2005, this Court sentenced Defendant to 393 months, consisting of nine months on each of Counts 1, 3, 5, and 7 to be served concurrently; eighty-four months on Count 2 to be served consecutively to the term imposed on all other counts; and 300 months on Count 4 to be served consecutively to the term imposed on all other counts. ECF No. 62 at 2. Upon release, Defendant would serve five years of supervised release. *Id*. at 3.

Defendant is incarcerated at FCI Coleman Low in Sumterville, Florida. ECF No. 133 at 2. His projected release date is January 9, 2032. *Id*. On December 14, 2020, Defendant filed a *pro se* Motion for Compassionate Release. ECF No. 128. On December 18, 2020, the Court appointed CJA panel attorney, Steven M. Sarm, to represent Defendant. (d/e 12/18/2020). On January 12, 2021, Defendant filed a *pro se* Amendment to his Motion. ECF No. 131. On January 28, 2021, Mr. Sarm filed a Second Amended Motion for Compassionate Release on Defendant's behalf. ECF No. 133. On February 11, 2021, the Government filed a Response in opposition to compassionate release. ECF No. 135. On March 11, 2021, Defendant filed a Reply to the Government's Response and attached an opinion issued by Judge McDade to his Reply. ECF No. 137; *see United States v. Haynes*, 96-CR-40034, 2021 WL 406595 (C.D. Ill. Feb. 5, 2021). Defendant did not seek leave of Court to file a Reply or explain why the Reply was filed four weeks after the Government filed its Response, even though Judge McDade's opinion was entered on February 5, 2021. Nevertheless, the Court will consider *Haynes* for purposes of this Order.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. In *Gunn*, the Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the

4

Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case. Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

In February 2020, Defendant requested a sentence reduction from the warden at his facility, claiming that his sentence is grossly disproportionate to the crimes he committed. ECF No. 135-2. Defendant's request stated:

> I am filing for Compassionate Release/Reduction in sentence and using section 403 of the First Step Act as one example why I'm entitled to relief as statue for "extraordinary and compelling reasons" was expanded to include "other reasons" subsection "D" that can justify resentencing need not to involve only medical, elderly or family circumstances. The (FSA) expanded its use for compassionate release to help out the people that were left behind. My sentence is grossly disproportionat [sic] to the crimes I committed with the fact that the stacking provision is no longer being used is a clear example of "extraordinary and compelling reasons."

*Id*. The warden denied his request. ECF No. 135-3. More than thirty days passed between the warden's denial and when Defendant filed his Motion for Compassionate Release. ECF No. 128.

Defendant submitted his request to the warden before the start of the pandemic, and as a result, the request was not based on COVID-19. The Government acknowledges that Defendant satisfied the exhaustion requirement as to "the stacking sentence" argument but asserts that he failed to exhaust his administrative remedies related to his request for compassionate release based on the pandemic. ECF No. 135 at 7.

This distinction is critical based on the Seventh Circuit's recent decision in *United States v. Williams*, 987 F.3d 700 (7th Cir. 2021). In that case, the defendant asked a warden to reduce his sentence because the district court's purported intrusion in his plea negotiations was an "extraordinary and compelling" reason warranting release. *Id*. at 702. He did not base his request to the warden on COVID-19; however, when the defendant filed a counseled motion for compassionate release, the motion sought release based on COVID-19. *Id*. The Seventh Circuit held that an inmate does not satisfy the exhaustion requirement, "by filing a grievance on one ground and then suing in court on an unrelated ground." *Id*. at 704.

Likewise, this Court finds that Defendant failed to properly exhaust his administrative remedies before filing a motion for compassionate release with respect to the COVID-19 pandemic. *See Williams*, 987 F.3d at 703 (quoting § 3582(c)(1)(A) ("The exhaustion requirement is designed to allow the Bureau to bring 'a motion on the defendant's behalf,' before he moves on his own behalf. And the Bureau cannot determine whether it should bring a compassionate-release motion if an inmate does not explain in his request the ground justifying his release."). In his Motion, Defendant asserted that the pandemic and his risk of infection constitutes extraordinary and compelling reasons justifying relief; however, he never asked the BOP to seek his release on

that ground. Rather, Defendant requested the BOP to seek his release on the ground that his sentence is allegedly disproportionate to the crimes committed because "the stacking provision is no longer being used." ECF No. 135-2. Consequently, the only basis properly before this Court for purposes of exhaustion is the argument related to Defendant's convictions under § 924(c).

## II. Defendant Failed to Establish Extraordinary and Compelling Reasons to Justify a Sentence Reduction

Defendant argues that the Court should reduce his 393-month sentence by ten years to time served because: (1) his sentence is too lengthy in light of the recent changes to § 924(c); and (2) he has demonstrated "an incredible rehabilitative potential." ECF No. 133 at 4, 13. The Government asserts that Defendant has not established extraordinary and compelling reasons for a reduction because Congress instructed that changes to § 924(c) are not retroactive in all instances. ECF No. 135 at 2. Additionally, the Government argues that Congress excluded rehabilitation efforts alone from being considered an extraordinary and compelling reason for a sentence reduction. *Id*.

### A. Defendant's Sentence

Defendant's sentence involved the mandatory "stacking" of § 924(c) violations. *Id*. at 10. He received only nine months concurrently on the bank robbery counts but received a mandatory minimum sentence of seven consecutive years on the first § 924(c) conviction, followed by the mandatory minimum sentence of twenty-five consecutive years on his "second" conviction under § 924(c). ECF No. 133 at 4. Defendant argues that a recent amendment to § 924(c), which reduced the penalty for multiple § 924(c) violations committed by an offender who had not previously incurred such a conviction, applies retroactively to his case under the First Step Act. *Id*. Defendant argues that recent case law lends support to the concept that Congress intended to give courts additional to power to reduce sentences and expand the use of compassionate release. *Id*. at 4-10

7

(citing *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Vir. May 26, 2020); *Gunn*, 980 F.3d at 1180). As a result, Defendant asserts that this Court should exercise its discretion and reduce his sentence to reflect the term of imprisonment he would receive today under the revised § 924(c). ECF No. 133 at 10.

The Government argues that the length of Defendant's original sentence and a non-retroactive change in the law do not constitute an extraordinary and compelling reason for a sentence reduction. ECF No. 135 at 11. The Government claims that Defendant is serving the sentence Congress intended for serial armed bank robbers who committed their crimes prior to the passage of the First Step Act and that the change to § 924(c) does not apply retroactively to Defendant. *Id*. at 13-14.

As the Government noted in its response, Congress determines if a statutory provision applies retroactively. *Dorsey v. United States*, 567 U.S. 260, 274 (2012). It is presumed that a change to criminal penalties does not apply retroactively, unless Congress provides otherwise. *Id*. at 272; *see also Middleton v. City of Chicago,* 578 F.3d 655, 662 (7th Cir. 2009) ("a court should not apply a newly enacted statutory provision retroactively unless Congress has clearly mandated such an extension."). In § 403(b) of the First Step Act, Congress stated its intent explicitly: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." As noted in *Haynes*, "[t]his is persuasive evidence Congress did not intend § 403 of the First Step Act, the anti-stacking amendment, to be the basis for relief to those who have already been sentenced, a conclusion which comports with long-standing jurisprudence for ascertainment of Congressional intent." *Haynes*, 2021 WL 406595, at *5 (citing *United States v. Godinez*, 955 F.3d 651, 656 (7th Cir. 2020) ("[W]here Congress includes particular language in

8

one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

In *Haynes*, Judge McDade joined a "growing faction of courts holding 'the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *Haynes*, 2021 WL 406595, at *6 (citing *McCoy*, 981 F.3d at 285). However, Judge McDade also stated that "holding a severe sentencing disparity *can* constitute an 'extraordinary and compelling' reason is not the same as holding it *will*. Compassionate release inquiries are highly individual and case-specific, and … relief under § 3582(c)(1)(A)(i) will be reserved only for such disparities that can be truly described as an extraordinary and compelling reason for relief." *Haynes*, 2021 WL 406595, at *6.

This Court has previously rejected the argument that the sentencing disparities created by § 403 amount to an extraordinary and compelling reason justifying compassionate release. *See United States v. Welker*, 13-CR-10061, 2020 WL 7091540, at *4 (C.D. Ill. Dec. 4, 2020). This Court cannot read retroactivity into the guidelines or the statute without clear language indicating that it is appropriate for the Court to do so. Given that Defendant was sentenced before the passage of the First Step Act, the changes made to § 924(c) do not apply reactively to Defendant. Therefore, this Court finds that the removal of the "stacking" provision from § 924(c) does not constitute an extraordinary and compelling reason to grant compassionate release in this case.

### B. Defendant's Rehabilitation Efforts

Defendant asserts that this Court should exercise its discretion to reduce his sentence based, in part, upon his rehabilitative potential. ECF No. 133 at 10. During his seventeen years in prison,

he has completed numerous rehabilitative programs and assisted other prisoners by teaching classes, such as painting and drawing. *Id*. He also engaged in programs designed to help other prisoners as a "suicide companion" and worked for the institutional doctor who ran the residential drug classes in prison (RDAP). *Id*.

The Government acknowledges that it is beneficial for Defendant to participate in BOP programs but argues his participation does not demonstrate that he is rehabilitated. ECF No. 135 at 14. In other words, rehabilitation alone does not constitute an extraordinary and compelling reason for a sentence reduction. *Id*. at 15.

Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, § 994(t) states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

As a matter of law, this Court finds that none of Defendant's proffered reasons are "extraordinary and compelling" under § 3582(c)(1)(A)(i), and therefore, his Motion is denied.

As stated above, this Court declines to consider whether the COVID-19 pandemic constitutes an extraordinary and compelling reason for a reduction because Defendant failed to exhaust his administrative remedies on this issue before filing his Motion. In any event, Defendant is forty years old, has contracted COVID-19 and recovered, and does not have any health conditions that increase his risk for developing severe symptoms from COVID-19. *See* ECF No. 133 at 12.

### III. Applicable § 3553(a) Factors Do Not Support a Sentence Reduction

Even if Defendant successfully demonstrated extraordinary and compelling reasons for a reduced sentence, this Court finds that a reduction would be unwarranted under § 3553(a) factors. Defendant and Hembree entered four banks in broad daylight with a firearm, putting bank employees and customers in danger. Although Defendant himself may not have held the firearms or administered the pepper spray, he deliberately chose to participate in this violence and was able to empty the vaults and teller drawers while Hembree threatened the victims at gunpoint. The violent behavior and repeated offenses demonstrate that Defendant would pose a danger to the community if released. *See* USSG § 1B1.13(2).

During his time in prison, Defendant's behavior has not been stellar. He has received disciplinary infractions for interfering with taking count, being in an unauthorized area, tattooing or self-mutilation, being absent from assignment, and two disciplinary infractions for possessing a hazardous tool. ECF No. 130 at 2. Defendant has ten more years remaining on his sentence. ECF No. 133 at 2. As a result, the Court finds that a reduction would not reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence to others, or avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* § 3553(a).

#### CONCLUSION

Defendant's Second Amended Motion for Compassionate Release [133] is DENIED and his *pro se* Motions for Compassionate Release [128], [131] are MOOT.

ENTERED this 11th day of March, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
